UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SEAN OELLIEN, *et al.*, ) | |
| ) | Case No. 3:23-cv-319 |
| *Plaintiffs*, ) | |
| ) | Judge Atchley |
| v. ) | |
| ) | Magistrate Judge McCook |
| KNOX COUNTY, TENNESSEE, ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

## MEMORANDUM OPINION ORDER

Before the Court are Defendant Knox County, Tennessee's Motion to Revise Order [Doc. 30], its Motion to Certify this Court's Order for Interlocutory Appeal and Stay Proceedings [Doc. 31], and its Motion for Oral Argument [Doc. 35]. For the following reasons, the Motions [Docs. 30–31, 35] are **DENIED**.

### I. BACKGROUND

The Oelliens allege that their child ("Minor") joked about stealing a plane and crashing it into his middle school during a school art class. [Doc. 1 at ¶¶ 12–13]. This was apparently part of several students' efforts to "one-up" each other by telling outlandish stories. [*Id.* at ¶ 14]. School personnel, however, viewed the situation differently. Around midday, Minor was escorted to the principal's office by a Knox County Sheriff's deputy. [*Id.* at ¶ 17]. Once he arrived, Minor was handed a blank form and asked to detail what happened that morning in art. [*Id.* at ¶ 18]. Although Minor was initially cooperative, he soon declined to answer any additional questions until an attorney or his parents were present. [*Id.* at ¶ 19]. By this time, a deputy was already searching Minor's backpack, and Minor was in handcuffs. [*Id.* at ¶¶ 20–21].

The principal called Minor's father, Plantiff Sean Oellien, to both describe the situation and request that Mr. Oellien instruct Minor to answer the principal's questions. [*Id.* at ¶ 22]. Mr. Oellien responded that he would not instruct his child to answer any questions until he was present but that he was only fifteen minutes away and already en route to the middle school. [*Id.* at ¶ 23]. As this point, one of the deputies (the "Arresting Deputy") got on the phone and informed Mr. Oellien that if Minor did not answer the questions immediately, Minor would be arrested. [*Id.* at ¶ 24]. Mr. Oellien told the Arresting Deputy that Minor would gladly answer any questions as soon as he and an attorney were present. [*Id.* at ¶ 25]. The Arresting Deputy responded by telling Mr. Oellien that he did not need to come to the middle school, that Minor was being arrested, and that Mr. Oellien should wait for a call from the Juvenile Center. [*Id.* at ¶¶ 27–28].

After Mr. Oellien confirmed that he did not need to go to the middle school, he travelled the Juvenile Center. [*Id.* at ¶¶ 30–32]. There, he waited for several hours with no sign of Minor. [*Id.* at ¶¶ 32–33]. Eventually, Mr. Oellien called the middle school to see if Minor was still there but was told that he was not. [*Id.* at ¶¶ 33–34]. Around the same time, Minor's criminal defense attorney contacted the Knox County Sheriff's Office to determine Minor's location but was told that the Office did not know where Minor was. [*Id.* at ¶ 35]. Juvenile Center personnel similarly had no idea where to find Minor. [*Id.* at ¶ 36]. It was only when Minor arrived at the Juvenile Center in the back of a transport van hours after his arrest that Mr. Oellien was finally able to locate his child. [*Id.* at ¶¶ 37–38]. But having located Minor, Mr. Oellien was unable to take him home. The transport van Minor arrived in had reached the Juvenile Center so late in the day that all the judges had already left. [*Id.* at ¶ 38]. Consequently, there was no one able to arraign Minor. [*Id.*]. Furthermore, because Minor was arrested on a Friday, this meant that he could neither be arraigned nor receive a probable cause determination until the following Monday. [*See id.*]. In

total, Minor was detained for over 63 hours without receiving a probable cause determination. [*Id.* at ¶ 67].

As for where Minor was when no one could find him, he was in the back of a patrol car sitting outside the middle school. [*Id.* at ¶ 29]. After the Arresting Deputy informed Mr. Oellien that Minor was being arrested, Minor was escorted to a patrol car. [*Id.* at ¶¶ 27–29]. Minor waited there for several hours until the transport van arrived to take him to the Juvenile Center. [*Id.* at ¶¶ 46, 48].

Disturbed by these events, Mr. Oellien and Minor's mother, Ronda Oellien, filed the instant lawsuit alleging that Knox County, acting through the Knox County Sheriff's Office, violated Minor's constitutional rights. [Doc. 1]. After the Oelliens amended the Complaint [Doc. 16], Knox County moved to dismiss, arguing, among other things, that the Oelliens had failed to plausibly allege a *Monell* claim against the County. [Doc. 17]. The Court denied this portion of the County's Motion to Dismiss. [Doc. 28].

Shortly thereafter, Knox County filed the currently pending Motion to Revise Order wherein it argues that the Court committed clear error in denying its Motion as to the Oellien's *Monell* claims by relying on a district court case that has since been implicitly overruled. [Doc. 30]. Knox County also moved in the alternative for the Court to certify its prior order for interlocutory appeal and to stay proceedings. [Doc. 31]. Finally, the County requested that the Court hear oral arguments on its Motion to Revise Order. [Doc. 35]. Each of these Motions is ripe for adjudication.

II.     **MOTION FOR ORAL ARGUMENT**

Starting with Knox County's Motion for Oral Argument, the Court has reviewed the record in this case, the applicable legal authorities, and the parties' arguments. Given the issues at play,

the Court finds that oral argument is not necessary for it to resolve Knox County's Motion to Revise Order. Accordingly, the Motion for Oral Argument [Doc. 35] is **DENIED**.

### III. MOTION TO REVISE ORDER

Next, the Court turns its attention to Knox County's Motion to Revise Order [Doc. 30] wherein the County asks the Court to correct a clear error and prevent manifest injustice by revising its order allowing the Oelliens' *Monell* claims to proceed.

#### A. Standard of Review

"District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of a final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Courts will generally reconsider interlocutory orders under three circumstances: (1) an intervening change of controlling law; (2) availability of new evidence; and (3) to correct a clear error or prevent manifest injustice. *Id*. The Court will not entertain motions to reconsider that are "intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier." *Walter v. Auto-Owners Mut. Ins. Co.*, No. 3:15-CV-535-TAV-DCP, 2018 U.S. Dist. LEXIS 145864, at *9 (E.D. Tenn. Aug. 28, 2018) (quoting *Ne. Ohio Coal. for the Homeless v. Brunner*, 652 F. Supp. 2d 871, 877 (S.D. Ohio 2009)). Likewise, a motion to reconsider is not "an opportunity to raise new legal arguments that were available before the interlocutory order issued." *Id*.

#### B. Analysis

Knox County asserts that the Oelliens have failed to adequately plead their *Monell* claims and that the Court committed clear error when it denied the County's Motion to Dismiss. [*See generally* Doc. 30]. Specifically, Knox County contends the *Rolen v. City of Cleveland*, No. 1:12

4

CV 1914, 2013 U.S. Dist. LEXIS 195086, at *15 (N.D. Ohio Aug. 6, 2013) decision that this Court relied on in denying the County's Motion has been so eroded by subsequent developments in Sixth Circuit caselaw that it has effectively been overruled. [Doc. 30 at 3–7]. Accordingly, the County asserts that the Court committed clear error by relying on this discredited case. [*See id.*]. The Oelliens, on the other hand, contend both that *Rolen* remains good law and that they have adequately pled their *Monell* claims irrespective of whether *Rolen* has been overruled. Upon review, the Court finds that the Oelliens have sufficiently pled their *Monell* claims regardless of whether *Rolen* remains good law. As a result, Knox County's Motion to Revise Order [Doc. 30] is **DENIED**.

"To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Absent such a policy or custom, a plaintiff cannot sue a municipality under § 1983 notwithstanding the fact that he was injured by the municipality's agent or employee. *Id.* To prove the existence of an illegal policy or custom, "[t]he plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id.* Where, as here, the plaintiff relies on only a single incident to support a *Monell* claim, that claim may proceed under only the failure to train or supervise theory of liability. *See Annabel v. Jackson Cty. Sheriff Dep't*, No. 22-12189, 2024 U.S. Dist. LEXIS 152745, at *6 (E.D. Mich. Aug. 26, 2024).

Establishing a failure to train claim requires a plaintiff to prove: "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the

municipality's deliberate indifference; and (3) that the inadequacy is closely related to or actually caused his injury." *Rayfield v. City of Grand Rapids*, 768 F. App'x 495, 511 (6th Cir. 2019) (cleaned up). When such a claim is premised on a single incident, a plaintiff can establish deliberate indifference by showing that a municipality has failed "'to provide adequate training in light of foreseeable consequences that could result from the lack of instruction,' as would be the case, for example, if a municipality failed to instruct its officers in the use of deadly force." *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003) (quoting *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999)); *see also City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (noting that there may be circumstances where—in light of an employee's duties—the need for training is so obvious and the inadequacy of training so likely to result in constitutional violations that it amounts to deliberate indifference). Here, the Oelliens allege that "Knox County, through the Knox County Sheriff's Office, failed to properly train the Arresting Deputy regarding the arrest and transportation of a detainee and/or a juvenile detainee[,]" and that as a result of this failure to train, Minor was unconstitutionally seized and denied a prompt probable cause hearing. [Doc. 16 at ¶¶ 55–68]. These allegations are sufficient to survive a motion to dismiss.

"Individuals arrested and detained without a warrant are entitled to a 'prompt' judicial determination of probable cause." *Brown v. Knapp*, 75 F.4th 638, 649 (6th Cir. 2023) (internal quotation marks omitted). Absent exceptional circumstances, this means that a detainee must receive a probable cause determination within 48 hours. *Id.* (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 56–57 (1991)). If he does not, then his Fourth Amendment rights have been violated. *Id.* Given the frequency with which police officers make warrantless arrests, it is entirely foreseeable that failing to train them on the need to ensure detainees receive prompt probable cause determinations will result in a violation of the detainee's constitutional rights. *See*

*Cherrington*, 344 F.3d at 647; *Rayfield*, 768 F. App'x at 511. Thus, training that fails to instruct police officers on the 48-hour probable cause determination requirement is inadequate, and a municipality is deliberately indifferent if it fails to train its officers on the need for prompt probable cause determinations. *See Cherrington*, 344 F.3d at 647; *Rayfield*, 768 F. App'x at 511.

Looking to the Amended Complaint, the Oelliens allege that Knox County failed to train the Arresting Deputy regarding the arrest and transportation of detainees. [Doc. 16 at ¶ 55]. They further allege that because of Knox County's failure to properly train the Arresting Deputy, Minor arrived at the Juvenile Center too late to receive his constitutionally required prompt probable cause determination. [*See id.* at ¶¶ 39–55, 67]. Accepting these allegations as true and drawing all reasonable inferences in the Oelliens' favor,[1] they have plausibly alleged: (1) that Knox County's training was inadequate regarding the need to ensure that detainees receive prompt probable cause determinations; (2) that the County was deliberately indifferent to this inadequacy and the constitutional violations it was likely to bring about; and (3) that Minor's constitutional rights were violated as a result of this inadequacy and the County's deliberate indifference. In other words, they have sufficiently pled a *Monell* claim, irrespective of whether *Rolen* remains good law. *See Rayfield*, 768 F. App'x at 511. Consequently, it was not clear error to deny Knox County's Motion to Dismiss as to the Oelliens' *Monell* claims and there is no manifest injustice in allowing them to proceed. Accordingly, the Motion to Revise Order [Doc. 30] is **DENIED**.

---

[1] *Peffer v. Thompson*, 754 F. App'x 316, 318 (6th Cir. 2018) ("In reviewing a 12(b)(6) motion, the court must view the complaint in the light most favorable to the plaintiff, accepting as true all allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor.")

### IV. MOTION TO CERTIFY THIS COURT'S ORDER FOR INTERLOCUTORY APPEAL AND STAY PROCEEDINGS

In the alternative to its Motion to Revise Order, Knox County also moved to certify this Court's prior order for interlocutory appeal and to stay proceedings. [Doc. 31]. As the Court finds that an interlocutory appeal is not warranted, the County's Motion [Doc. 31] is **DENIED.**

"A district court may certify its decision for interlocutory appeal if, together with satisfying prudential concerns, it involves a controlling question of law as to which there is a substantial ground for a difference of opinion, and immediate appeal may materially advance the termination of the litigation." *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, No. 17-2445/18-0101, 2018 U.S. App. LEXIS 17379, at *2 (6th Cir. June 25, 2018). "The party seeking an interlocutory appeal has the burden of showing exceptional circumstances exist warranting an interlocutory appeal and district court judges have broad discretion to deny certification even where the statutory criteria are met." *Gasiorowski-Watts v. CSX Transp., Inc.*, No. 1:23 CV 1043, 2023 U.S. Dist. LEXIS 195695, at *15 (N.D. Ohio Nov. 1, 2023). "When exercising this discretion, this Court must heed the Sixth Circuit Court of Appeals' warning that interlocutory review should be 'granted sparingly and only in exceptional cases.'" *Wang v. GM, LLC*, No. 18-10347, 2019 U.S. Dist. LEXIS 74166, at *3 (E.D. Mich. May 2, 2019) (quoting *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002)).

Knox County argues that all the relevant factors weigh in favor of an interlocutory appeal. The County notes that the contested legal issues are controlling because if the Sixth Circuit found that the Oelliens had failed to sufficiently allege a *Monell* claim, it would result in the dismissal of this case. [Doc. 31 at 2]. The County also argues that because reversal would result in dismissal, allowing an interlocutory appeal could materially advance the termination of the instant litigation. [*Id.* at 3]. While the Court agrees with the County that these two factors weigh in favor an interlocutory appeal, it disagrees with the County's contention that if it denies the Motion to Revise

8

Order, it must conclude that there is substantial ground for difference of opinion as to whether the Oelliens' *Monell* claims should proceed past the motion to dismiss stage. [*Id.* at 1, 3]. The County's position is premised on its argument that *Rolen* has been overruled, and the Court erred in relying on it. [*Id.* at 1]. But as the Court has already noted, the Oelliens' *Monell* claims survive the County's Motion to Dismiss irrespective of *Rolen*. Thus, it is immaterial whether there is substantial ground for disagreement as to *Rolen*'s validity. What matters is whether there is substantial ground for disagreement as to whether the Oelliens have plausibly alleged a *Monell* claim. And for the reasons described in the preceding section, the Court finds there is not. Accordingly, the Motion to Certify This Court's Order for Interlocutory Appeal and Stay Proceedings [Doc. 31] is **DENIED**.

V. CONCLUSION

For the foregoing reasons, Knox County's Motion for Oral Argument [Doc. 35], its Motion to Revise Order [Doc. 30], and its Motion to Certify this Court's Order for Interlocutory Appeal and Stay Proceedings [Docs. 31] are **DENIED**.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**